**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JEROME A. WILLIAMS, | : | |
| Petitioner, | : | |
| v. | : | CIVIL ACTION NO. 07-00123-KD-B |
| RALPH HOOKS, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Jerome A. Williams, a state prisoner currently in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Williams challenges the validity of his 2004 convictions by a jury in the Mobile County, Alabama Circuit Court, for rape, burglary, and theft of property, for which he received sentences of life imprisonment without parole, life imprisonment, and twenty (20) years imprisonment, respectively, as a habitual offender. (Docs. 1; 9).

This matter is now before the undersigned Magistrate Judge on Petitioner's petition, Respondent's answer and supplemental answer, briefs, responses, and exhibits filed by the parties, the state court records, various appellate briefs filed by the parties, and opinions and orders of the state appellate courts. Following a careful review of the petition and record, the undersigned finds

that an evidentiary hearing is not warranted on the issues.[1] <u>See</u> 28 U.S.C. § 2254(e)(2).

## **FINDINGS OF FACT**

The Alabama Court of Criminal Appeals found the facts of this

---

[1]Because Petitioner filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." <u>Kelley v. Sec'y for Dep't of Corrs.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004). The legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> **(A)** the claim relies on—
>
> **(I)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to establish that an evidentiary hearing is warranted in this case.

case to be as follows:[2]

The appellant, Jerome Anthony Williams, was convicted of one count of first-degree rape, a violation of § 13A-6-61, Ala. Code 1975; one count of second-degree burglary, a violation of § 13A-7-6, Ala. Code 1975; and one count of first-degree theft of property, a violation of § 13A-8-3, Ala. Code 1975. He was sentenced as a habitual offender to a term of life without the possibility of parole for the rape conviction; life imprisonment for the burglary conviction; and 20 years' imprisonment for the theft conviction. All of the sentences were ordered to run consecutively. This appeal followed.

The evidence revealed that on May 30, 2003, A.M. traveled to Mobile to visit her two daughters, who were students at Springhill College. After exiting the interstate in West Mobile, she checked into the Comfort Inn Suites hotel. As A.M. entered her hotel room, she was attacked from behind by a black male. He pushed her into the room, slammed the door, and closed the curtains. He emptied the contents of A.M.'s purse on the coffee table and took in excess of $87 in cash. He also took most of A.M.'s jewelry that she was wearing at the time. Finally, he ordered A.M. to remove her clothes and then he raped her. Before leaving, A.M.'s assailant warned her not to call anyone. A.M. telephoned her family and then notified the police. While the hotel room was examined for evidence, A.M. went to the hospital where she received medical attention. A rape kit was collected for future use as evidence.

During the investigation, Detective David McMeans recalled a similar case in the Mobile area that involved a black male suspect named Claude Jowers. He prepared a photographic lineup for

_____

[2]AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Id. (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

A.M.'s review; however, A.M. was unable to identify her attacker from the photographs.

Although A.M.'s assailant wore a condom, body fluids were found on A.M.'s shorts during the course of the investigation that were submitted to the Alabama Department of Forensic Sciences for DNA testing. The results were compared to the DNA test results obtained from A.M.'s rape kit samples. After extracting the DNA of the victim from the samples, remaining DNA was found to be present in the samples from an unknown source. The sample was compared to the DNA sample from Claude Jowers but no match was achieved. The results were then entered into the FBI's National DNA Identification Index database of criminal offenders, ("CODIS"), which revealed one specific match. The database revealed that the DNA matched Williams, an ex-convict from Prichard. Williams was subsequently arrested and charged with the rape of A.M.

(Doc. 10, Ex. 4 at 1-2).

Williams was indicted by the Mobile County Grand Jury on January 16, 2004, and charged with rape, burglary, and theft of property. (Doc. 11, Ex. 1 at 25-27). On March 29, 2004, Williams entered a plea of not guilty to the charges, and his jury trial commenced on September 13, 2004, in the Circuit Court of Mobile County, Alabama, the Honorable Robert Kendall presiding.[3] (Id. at 5, 8). Attorney Greg Reese was initially appointed to represent Petitioner; however, following the prosecution's opening statement, Williams requested and was granted permission to proceed *pro se* for his trial proceedings, with Reese acting as stand-by counsel. (Id.

---

[3]The record reflects that Judge Kendall handled the preliminary matters during Williams' trial, while Judge Roderick Stout presided over the remainder of the proceedings. See (Doc. 11, Ex. 1, Vol. 2, p. 8 (R.7)).

at 5).  On September 22, 2004, the jury returned a verdict of guilty as to all three (3) counts, and on October 28, 2004, Williams was sentenced under the Habitual Felony Offender Act to life imprisonment without parole for the rape conviction, life imprisonment for the burglary conviction, and twenty (20) years imprisonment for the theft conviction. All of the sentences were ordered to run consecutively. (Id. at 9-10, 16-17, 23-24, 28).

On November 16, 2004, Williams filed written notice of appeal to the Alabama Court of Criminal Appeals, and attorney Linda Collins Jensen was appointed to represent Williams during his appellate proceedings. (Doc. 11, Ex. 1, p. 10). On August 19, 2005, the Alabama Court of Criminal Appeals affirmed Petitioner's convictions by unpublished memorandum opinion. (Doc. 10, Ex. 4). The record does not reflect the date on which Williams' application for rehearing was overruled; however, it does reflect that his petition for writ of certiorari was denied, on November 10, 2005, by the Alabama Supreme Court. (Doc. 10, Ex. 5).  The Alabama Court of Criminal Appeals subsequently issued its certificate of final judgment on November 14, 2005. (Id.)  Williams' conviction became final on February 8, 2006, that is when the 90 day period in which Petitioner could have sought review of his conviction by the U.S. Supreme Court concluded.  See Pugh v. Washington, 243 F. 3d 1229 (11th Cir. 2001).  The record does not indicate, and Williams does not allege that he filed any state post-conviction petition

challenging his convictions. <u>See</u> (Doc. 1).

On February 7, 2007[4], Williams filed the instant petition in this Court setting forth three (3) claims in support of his request for habeas relief. (Doc. 1 at 7-8). In his supplemental answer[5], Respondent asserts that the state courts properly denied relief on all three (3) of Williams' claims on the merits. (Doc. 16).

## DISCUSSION

Upon careful review of the record, the undersigned notes that Williams' claims were raised in his direct appeal, were considered by the state courts, and were denied on the merits. Thus, in order to obtain federal habeas relief on the basis of any of these claims, Williams must show that the state courts resolved his claims in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme

---

[4]Although Williams's petition was received and docketed by the Clerk's Office on February 16, 2007, the petition is signed and dated February 7, 2007. Pursuant to the prison mailbox rule, February 7, 2007 is to be used as the filing date. <u>Houston v</u>. <u>Lack</u>, 487 U.S. 266, 276, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)( "absent evidence to the contrary in prison logs or other records, [this court] will assume that [petitioner's] motion was delivered to prison officials the day he signed it...").

[5]Respondent, on June 20, 2007, filed his initial answer to Petitioner's petition seeking habeas corpus relief, wherein he alleged that Petitioner's petition was barred by the one-year statute of limitation. (Doc. 9). However, after a thorough review of the record, the undersigned determined that Petitioner's petition was, in fact, timely filed and directed Respondent to file an amended answer. (Doc. 15). Accordingly, pursuant to the Court's Order, Respondent filed a supplemental response. (Doc. 16).

Court precedent.  28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas
> corpus on behalf of a person in custody
> pursuant to the judgment of a State court
> shall not be granted with respect to any
> claim that was adjudicated on the merits in
> State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was
> > contrary to, or involved an
> > unreasonable application of,
> > clearly established Federal law, as
> > determined by the Supreme Court of
> > the United States; or
> >
> > (2) resulted in a decision that was
> > based on an unreasonable
> > determination of the facts in light
> > of the evidence presented in the
> > State court proceeding.

Id.  In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice

O'Connor, writing for a majority of the Court, recognized that "§

2254(d)(1) places a new constraint on the power of a federal habeas

court to grant a state prisoner's application for a writ of habeas

corpus with respect to claims adjudicated on the merits in state

court."

> A state court decision is contrary to
> the Supreme Court's clearly established
> precedent (1) if the state court applies a
> rule that contradicts the governing law as
> set forth in Supreme Court case law, or (2)
> if the state court confronts a set of facts
> that are materially indistinguishable from
> those in a decision of the Supreme Court and
> nevertheless arrives at a result different
> from Supreme Court precedent.  See Williams
> v. Taylor, 529 U.S. 362, 120 S. Ct. 1495,
> 1519-20, 146 L. Ed. 2d 389 (2000).

7

> A state court decision involves an
> unreasonable application of Supreme Court
> precedent "if the state court identifies the
> correct governing legal rule from [Supreme
> Court] cases but unreasonably applies it to
> the facts of the particular state prisoner's
> case." Williams, 120 S. Ct. at 1520.  In
> addition, a state court decision involves an
> unreasonable application of Supreme Court
> precedent "if the state court either
> unreasonably extends a legal principle from
> [Supreme Court] precedent to a new context
> where it should not apply or unreasonably
> refuses to extend that principle to a new
> context where it should apply." Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  Moreover,

as discussed above, the Act, as amended, presumes as correct all

determinations of factual issues made by a state court and places

the burden upon the petitioner to rebut such a presumption of

correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

For the reasons set forth below, the Court finds that Williams is

not entitled to habeas relief on the basis of any of his federal

habeas claims.  The Court will now address each of Petitioner's

claims in turn.

> I.   Claim 1.

Petitioner argues first in his petition that he is entitled to

relief under § 2254 because the trial court violated his

constitutional right to waive counsel and represent himself during

the suppression hearing for his trial.[6]  (Doc. 1 at 7).  According

---

[6]It appears that in his direct appeal, Williams alleged that
the trial court denied him his right to waive representation

to Petitioner, the trial court denied his request without an inquiry. (Doc. 1 at 7). The Court notes that Williams fails to cite to any United States Supreme Court case to support his claim in this matter.

As indicated above, Williams raised this claim in the state court on direct appeal, and the Alabama Court of Criminal Appeals denied this claim on the merits as follows:

> On appeal, Williams argues that the trial court violated his constitutional right to waive representation by appointed counsel in order to represent himself during the suppression hearings and jury selection for his trial. His contention is that the trial court erred by waiting until the jury was empaneled and the pretrial hearings were concluded.
>
> The record reveals that the trial court appointed Williams's trial counsel on March 29, 2004. On May 3, 2004, at a motion hearing, it became apparent to the trial court that Williams and his counsel had a difference of opinion over trial strategy; however, Williams never indicated that he wished to exercise his right to self-representation. Only May 21, 2004, at a case status hearing, no such assertion was made. It was not until September 19, 2004, after voir dire was completed and the petit jury was sworn and empaneled, that Williams indicated that he wished to represent himself.
>
> We point out that jeopardy attached in this case when the jury was empaneled and sworn. See, e.g., Ex party Sullivan, 779 So. 2d 1157, 1162 (Ala. 2000); Ex parte McKenna, 655 So. 2d 989, 990 (Ala. 1995). Initially, the trial court denied

during both the suppression hearings and jury selection for his trial. However, in the instant petition, Williams only challenges the alleged denial during the suppression hearings. See (Doc. 1 at 7).

> Williams's request and continued the suppression
> hearing.  However, prior to the commencement of
> trial and before opening statements, Williams
> renewed his request.  The trial court reconsidered
> Williams's motion to represent himself at trial.
> After cautioning him about the perils of self-
> representation and ensuring that Williams
> understood that it was not in his best interest to
> proceed pro se, the trial court allowed Williams to
> proceed pro se with the assistance of stand-by
> counsel.  Given the fact that he was allowed to
> proceed pro se, we find no reversible error in the
> trial court's denial of his request to represent
> himself at the suppression hearing and during voir
> dire.

(Doc. 10, Ex. 4, p. 2-3).

In <u>Parker v. State</u>, 455 So. 2d 111, the Alabama Court of Criminal Appeals, discussing the federal law applicable to this claim in <u>Faretta v. California</u>, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), noted: "In <u>Faretta v. California</u>, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), the United States Supreme Court held that a criminal defendant has a Sixth Amendment right to conduct his own defense.  The demand to proceed pro se must, however, be timely made ... The defendant in <u>Faretta</u> made such a motion weeks before coming to trial." <u>Id.</u> at 112.  In other words, a defendant's request to proceed <u>pro se</u> must be made in a timely manner.  <u>See also</u> <u>Buhl v. Cooksey</u>, 233 F.3d 783, 795 (3d Cir. 2000) (holding that a defendant's request for self-representation was timely because he first made it several weeks before trial and then reasserted the request the day before the trial began); <u>United States v. Walker</u>, 142 F.3d 103, 109 (2d Cir. 1998) (holding that a

defendant's request for self-representation was untimely although
he made it before empaneling of the jury because he asserted the
request after nineteen days of voir dire); <u>United States v.
Lawrence</u>, 605 F.2d 1321, 1325 (4th Cir. 1979) (holding that a
defendant's request to proceed <u>pro se</u> was untimely because he made
it after the jury had been selected and before the trial court had
sworn the jury).

Further, in <u>United States ex rel. Maldonado v. Denno</u>, 348 F.2d
12 (2d Cir. 1965), the Second Circuit observed that

> [t]he right of a defendant in a criminal case to
> act as his own lawyer is unqualified if invoked
> prior to the start of the trial ... Once the trial
> has begun with the defendant represented by
> counsel, however, his right thereafter to discharge
> his lawyer and to represent himself is sharply
> curtailed. There must be a showing that the
> prejudice to the legitimate interests of the
> defendant overbalances the potential disruption of
> proceedings already in progress, with considerable
> weight being given to the trial judge's assessment
> of this balance.

<u>Id.</u> at 15 (citations omitted).

In this case, the record reflects that Petitioner first sought
to proceed *pro se* well after the jury was empaneled and sworn. <u>See</u>
(Doc. 11, Ex. 1, Pt. 2, pp. 36-37, 39, 41-42 (R. 35-36, 38, 40-
41)).

> THE COURT: Ladies and gentleman, raise your right
> hands.
> (Jury sworn)
>
> ................................................
>
> (Jury not present.)

..............................................

THE DEFENDANT: Excuse me, Mr. Kendall.

THE COURT: Sir?

THE DEFENDANT: Your Honor, I would like to request
- -
THE COURT: Talk into the microphone.

THE DEFENDANT:  Judge Kendall, I would like to
request to proceed pro se at this time, sir.

THE COURT: I deny your request.

THE DEFENDANT: On what grounds, Judge Kendall?

THE COURT: On the grounds that you are not trained
as a lawyer, you have got to have a lawyer.

THE DEFENDANT: Judge, he can assist, Judge Kendall.
I insist on proceeding pro se, sir.

THE COURT: I deny your request.
...
THE DEFENDANT: Judge Kendall, you cannot stop me
from representing myself in these proceedings,
Judge Kendall.

THE COURT: I just did.


Id.

     A short time later, after the suppression hearing regarding

DNA evidence had already commenced, Williams renewed his request.

          THE DEFENDANT: Judge Kendall, in the Alabama
          Constitution, Article 1 and 6, the defendant has an
          absolute right to proceed pro se in any criminal
          proceeding. Also, the sixth amendment - - the
          clause of the sixth amendment also in the United
          States Constitution, any defendant can proceed any
          criminal defense pro se.

          THE COURT: I deny your request....

                              12

(Doc. 11, Ex. 1, Pt. 2, p. 55 (R. 54)).  By the time of this request, the suppression hearing had commenced and the state's DNA expert, William H. Jones, section head of the Mobile Regional Laboratory of the Alabama Department of Forensic Sciences, had undergone direct examination and was about to undergo cross examination by defense counsel.  Clearly, permitting Williams to discharge his counsel and to proceed *pro se* once the suppression hearing had commenced could have caused a "potential disruption of proceedings already in progress." <u>Denno</u>, 348 F.2d at 15.  Moreover, the record reflects that Williams' subsequent request, made after the prosecution's opening statement, that he be permitted to represent himself at trial was granted. <u>See</u> (Doc. 11, Ex 1, Vol. 2, pp. 17-27 (R. 16-26)).

As discussed above, in order to obtain federal habeas relief on the basis of claim 1, Williams must show that the state courts resolved this claim in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme Court precedent.  While the Alabama Court of Criminal Appeals did not mention <u>Faretta v. California</u>, or any comparable case, in its analysis of Williams' Sixth Amendment claim, recognition by the appellate court of the proper analysis is clear from a reading of that decision. <u>Cf.</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation to our cases - indeed, it does not even require awareness

of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). The Alabama Court of Criminal Appeals, in an unpublished opinion, noted that Williams' initial request to represent himself did not come until after the jury was empaneled and sworn. The Court found that "[g]iven the fact that he was allowed to proceed pro se, we find no reversible error in the trial court's denial of his request to represent himself at the suppression hearing and during voir dire." For the precise reasons found by the Alabama Court of Criminal Appeals, the undersigned finds that there was no reversible error in the trial court's denial of Williams' request to represent himself at the suppression hearing and that his constitutional rights were not violated. (Doc. 10, Ex. 4, p. 3).

Therefore, with respect to habeas claim 1, Williams has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law as set forth in Supreme Court case law, or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Likewise, he has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Thus, Williams has not established that he is entitled to relief under § 2254(d)(1).

14

In addition, Petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court must presume as correct the determinations of all factual issues made by the state court.  28 U.S.C. § 2254(e).  Williams has not rebutted that presumption of correctness by clear and convincing evidence.  Accordingly, his request for habeas relief on the basis of his Sixth Amendment claim is due to be denied.

II.  <u>Claim 2</u>.

Williams next argues in his petition that he is entitled to relief under § 2254 on the ground that the trial court improperly questioned witness William Jones, which resulted in prejudice against him.  Specifically, Williams alleges that the trial court invaded the province of the jury when it commented on the validity of the CODIS ("Combined DNA Index System") database.  (Doc. 1 at 7).  Williams raised this claim in the state court in his direct appeal, which was denied by the Alabama Court of Criminal Appeals.  That court found as follows:

> Williams next contends that the trial court erred when it made comments regarding DNA evidence.  Williams argues that the court's comments were improper because, he says, such comments invaded the province of the jury as the ultimate finder of fact.  The record indicates that the court made several comments during the examination of Bill Jones in order to clarify Jones's testimony relating to forensic testing that Jones performed as an examiner for the Alabama Department of

Forensic Sciences.  This Court has previously held
that:

> "'The trial judge is more than a mere
> moderator and it is his duty to conduct an
> orderly trial and to make certain as far as
> possible that there is no misunderstanding
> of the testimony of witnesses.  Thus, he may
> ask any question which would be proper for
> the prosecutor or defense counsel to ask so
> prejudice does not arise merely because the
> questions are asked by the court." 23 C.J.S.
> Criminal Law § 991 (1961).' "<u>Moore v. State</u>,
> 502 So. 2d 882, 885-86 (Ala. Crim. App.
> 1987)." <u>Hammonds v. State</u>, 777 So. 2d 750,
> 771 (Ala. Crim. App. 1999).

> Here the questions and summaries propounded by
> the trial court were not accusatory or cross-
> examination type questions that amounted to an
> abdication of the duties of the trial court; nor
> were the comments made in such a manner as to
> indicate that the judge was biased or to indicate
> the judge's opinion.  These remarks were
> straightforward, clarifying questions dealing with
> the validity and scientific acceptability of the
> state's forensic evidence.  These were questions
> that trial court had a duty to resolve before
> allowing the jury to consider the evidence in its
> factfinding role.  The trial court did not err, nor
> did it abandon its neutral role, when it asked a
> prosecution witness some clarifying questions
> concerning DNA testing.  <u>Johnston v. City of
> Birmingham</u>, 338 So. 2d 7 (Ala. Crim. App. 1976).

(Doc. 10, Ex. 4 at 3-5).

Again, in order to obtain federal habeas relief on the basis

of claim 2, Williams must show that the state courts resolved this

claim in a manner contrary to or involving an unreasonable

application of federal law as established by United States Supreme

Court precedent.  Williams has offered no United States Supreme law

16

to support his claim and thus has failed to meet this burden.

The Eleventh Circuit Court of Appeals addressed the issue of trial courts commenting on witness testimony in <u>United States v. Block</u>, 755 F.2d 770 (11th Cir. 1985).  In <u>Block</u>, the defendants alleged they were denied a fair trial by the actions and comments of the trial judge during the course of the trial. Specifically, the defendants alleged that the court made numerous comments in the presence of the jury which demonstrated the court's belief in their guilt, notably that the judge admonished one defendant not to make any "smart-ass remarks" while testifying. The Eleventh Circuit, however, determined that the interventions of the trial court were not so numerous or egregious to require reversal.  The Court noted the complex nature of the evidence and the fact that the defendants' trial took 10 weeks to complete.  The Court also observed that given one defendant testified three and one-half days and was asked more than 1800 questions by the defense and the prosecution, the court's 33 questions was not reversible error.

The <u>Block</u> court observed:

> A trial judge is ... more than a mere moderator and is under a duty to question witnesses and comment on evidence when it appears necessary. <u>United States v. Harris</u>, 720 F.2d 1259, 1260-61 (11th Cir. 1983); <u>United States v. Bartlett</u>, 633 F.2d 1184, 1188 (5th Cir.), cert. denied, 454 U.S. 820, 102 S. Ct. 101, 70 L. Ed. 2d 91 (1981). The trial court may interrogate a witness to clarify his testimony or to insure that a case is fairly tried. <u>Manchack v. S/S Overseas Progress</u>, 524 F.2d 918, 919 (5th Cir. 1975). On the other hand, a trial judge improperly interjects himself into the trial by

questioning witnesses when the attorneys are competently conducting their cases. <u>United States v. Welliver</u>, 601 F.2d 203, 208-09 (5th Cir. 1979); <u>United States v. Daniels</u>, 572 F.2d 535, 541 (5th Cir. 1978).

Also, in <u>United States v. Blackburn</u>, 165 Fed. Appx. 721, 724 (11th Cir. 2006), the Eleventh Circuit held that while the cumulative effect of numerous intrusions by the trial court might inhibit a defendant's right to a fair trial, prejudice could be cured by instructing the jury not to infer the court's opinion from comments or rulings.

In this case, the undersigned finds that the trial judge's attempt to avoid jury confusion stemming from Williams' questioning of witness Jones was necessary given that Williams was proceeding *pro se* and needed guidance in many aspects of legal procedure, including the phrasing of questions to witnesses in order not to run afoul of rules against hearsay, and the appropriate time to offer evidence. Indeed, the record reflects that the court found it necessary to intervene on more than one occasion to help clarify Williams' questioning of witnesses. <u>See</u>, <u>e.g.</u>, (Doc. 11, Ex. 1, Vol. 3, pp. 93, 98-99, 115-117, 132-33 (R.292, 297-98, 314-16, 331-32)). <u>See also</u> (Doc. 11, Ex. 1, Vol. 2, pp. 56-63, 67-69, 96, 129, 160-61 (R.55-62, 66-68, 95, 128, 159-61)).

Further, the undersigned finds no error or prejudice to Williams as a result of the court's interjections. <u>See</u> (Doc. 11, Ex. 1, Vol. 3, pp. 89-139 (R.288-338)). It is clear from a reading

18

of the transcript that the experienced trial judge played an active role during the proceedings.[7] However, the questions posed by the court were not so "numerous or egregious as to constitute manifest injustice." <u>Blackburn</u>, 165 Fed. Appx. at 725 (citing <u>United States v. Benefield</u>, 889 F.2d 1061, 1066 (11th Cir. 1989). The court's comments were intended to clarify the testimony given by Jones regarding how he came to discover Petitioner's name based on the unknown DNA sample.   Moreover, the Court, after attempting to clarify Williams' position and Jones' response, stated: "I'm really just trying to make sure we don't confuse the jury, and they understand the basic testimony that's been elicited, but you're free to ask whatever you want to ask." (Doc. 11, Ex. 1, Vol. 3, p. 90 (R. 289)).   Thereafter, Williams availed himself of the opportunity to question Jones further.

Before the court interjected, it was not clear from the trial testimony the scientific processes undertaken by Jones to link the unknown sample of DNA to Williams.  Williams' repetitive, and at times ambiguous, questions were potentially confusing to the jury. Moreover, as prescribed in <u>Blackburn</u>, the trial court orally charged the jury not to consider anything the court said as an opinion on the evidence, stating:

---

[7]As noted supra, Judge Kendall handled the preliminary matters during Williams' trial, while Judge Stout presided over the remainder of the proceedings, including the examination of William Jones. <u>See</u> (Doc. 11, Ex. 1, Vol. 2, p. 8 (R.7)).

> It would be improper for me to have an opinion, and it's
> certainly improper for me to try to convey that opinion
> to you.  Please do not let any ruling I have made or
> anything I have said during the source [sic] of this
> trial, give you the impression that I have an opinion
> about the true facts in this case one way or the other.
> ... [D]on't take any comment I have made or anything I
> have said to try to give you the impression that I have
> an opinion about the facts, because that's strictly your
> job and not mine to determine the true facts in the case.

(Doc. 11, Ex. 1, Vol. 4, pp. 40-41 (R.439-440)).  Further, the
court instructed the jury that they were the sole fact-finders in
this case.  Thus, the undersigned finds that the court's curative
instruction was sufficient to prevent prejudice, if any, and agrees
with the Alabama Court of Criminal Appeals that the trial judge
"did not abandon its neutral role." Accordingly, the undersigned
cannot find that the state court adjudication was contrary to law
nor can it be found that the state court unreasonably applied
relevant precedent to the facts of this case.  Accordingly,
Williams is not entitled to habeas relief on the basis of claim 2.

   III. <u>Claim 3</u>

   Williams next argues that he is entitled to habeas relief
because the trial court improperly admitted evidence concerning DNA
analysis, which constituted hearsay and which violated his right to
confront witnesses.  Williams presented this same argument to the
Alabama Court of Criminal Appeals on direct appeal.  Notably, that
court determined that Williams' objection at trial related to the
constitutionality of the DNA testing procedures and his Sixth
Amendment right to confront witness, not hearsay.  Thus, the court

held that Williams' claim was not preserved for appellate review. However, that court alternatively determined that Williams' claim had no merit and that the testimony did not constitute inadmissible hearsay.

At trial, William Jones, who works with the Alabama Department of Forensic Sciences in the Mobile Regional Laboratory, testified that he ran an unknown DNA sample obtained from the victim's shorts through the CODIS DNA database and the name returned was for Petitioner, Jerome Williams.  Next, Jones next testified that a known sample was obtained from Williams, and that he personally tested the known sample that was obtained from Williams against the unknown sample, which was obtained from the victim's shorts, and that it was a match. (Doc. 11, Ex. 1, Vol. 3, pp. 141-43 (R. 275-283)). Williams objected to Jones' testimony and argued that the results were hearsay because the initial analysis of the unknown sample was performed by CODIS and not by Jones.  (Doc. 11, Ex. 1, Vol. 3, pp. 49-50, 72-74, 88-89, 141-43 (R.248-49, 271-73, 287-88, 340-42)).  As indicated, Williams raised Jones' testimony as an assignment of error on direct appeal. The Alabama Court of Criminal Appeals held that the evidence was admissible under § 36-18-30, Ala. Code 1975[8], and rejected Petitioner's argument, finding no

_____

[8]Section 36-18-30, Ala. Code 1975, provides:

> Expert testimony or evidence relating to the use of genetic markers contained in or derived from DNA for identification purposes shall be

grounds for reversal, stating:

> Lastly Williams argues that the trial court erred when, over his objection, Alabama Department of Forensic Sciences Examiner Bill Jones was allowed to testify that he entered the unknown DNA sample that was extracted from the victim's shorts into the FBI's CODIS database and was informed via facsimile transmission that the profile matched Williams. Specifically, he claims that the information obtained from the database constituted hearsay. Because Williams's specific objection at trial related to the constitutionality of the testing procedures and his right to confront witnesses, not hearsay, this issue is not properly before this Court.

> In D.D.A. v. State, 650 So. 2d 571 (Ala. Crim. App. 1994), this Court supported its previous holding in Hudgins v. State, 615 So. 2d 1297 (Ala. Crim. App. 1993), that the right to confrontation is not necessarily coextensive with the hearsay rule. On that basis, a defendant's objection stated on the grounds of hearsay did not preserve for appellate review a claim of violation of the right to confront witnesses. Although in Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme Court seemed to make the distinction less absolute in holding that the rights to confrontation and protection from hearsay may or may not be coextensive, we cannot say that the CODIS results referenced by Jones in his testimony were inadmissible hearsay.

> Section 36-18-30, Ala. Code 1975, authorizes the Department of Forensic Sciences to offer testimony and evidence relating to the genetic markers derived from or contained in DNA in all

---

> admissible and accepted as evidence in all cases arising in all courts of this state, provided, however, the trial court shall be satisfied that the expert testimony or evidence meets the criteria for admissibility as set forth by the United States Supreme Court in Daubert, et. ux., et. al., v. Merrell Dow Pharmaceuticals, Inc., decided on June 28, 1993.

cases arising in all courts of this State pursuant to the criteria outlines in <u>Daubert v. Merrill-Dow Pharmaceuticals</u>, 509 U.S. 579 (1993). Even if we determined that this issue was preserved for appellate review, the CODIS results do not constitute inadmissible hearsay. Thus, the trial court did not err in allowing the testimony over Williams's objection.

We further note that the objected-to evidence was subsequently admitted without objection as part of State's Exhibit 11, the Department of Forensic Sciences report indicating that the unknown DNA sample extracted from the victim's shorts matched Williams's DNA profile. Thus, any error by the trial judge in overruling Williams' objection was made harmless by the admission of the report without another objection or a continuing objection. See <u>McCall v. State</u>, 833 So. 2d 673, 677 (Ala. Crim. App. 2001).

For all of the foregoing reasons, the judgment of the trial court is due to be affirmed.

**AFFIRMED.**

(Doc. 10, Ex. 4 at 5-6).

In <u>Crawford v. Washington</u>, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Supreme Court held that held that the Confrontation Clause does not allow the admission at trial of "testimonial" statements of a witness who does not appear at the trial unless the witness is unavailable and the defendant has had prior opportunity to cross-examine him. As asserted by Respondent, a review of witness Jones' trial testimony reflects that his statement that the FBI CODIS database showed that the unknown DNA sample which was obtained from the victim's shorts was that of Williams did not violate <u>Crawford v. Washington</u> because the

statement was not offered to prove the truth of the assertion but was instead offered to explain what led Jones to personally analyze a DNA sample obtained from Williams with the unknown sample obtained from the victim's shorts, and determine that they were a match. (Doc. 11, Ex. 1, Vol. 3, pp. 54-84 (R.253-283).  See Barriera-Vera, 303 Fed. Appx. 687, 697 (llth Cir. 2008)("[A]dmission of [police officer's] interview statements and trial testimony regarding the anonymous phone call did not violate hearsay rules or the Confrontation Clause because they were not admitted for the truth of the matter asserted."); see also United States v. Tolliver, 454 F.3d 660, 666 (7th Cir. 2006) (rejecting Crawford challenge to introduction of recorded conversations made by Government informant and offered into evidence for purpose of putting defendant's statements in context; noting that "aside from the testimonial versus nontestimonial issue, a crucial aspect of Crawford, is that it only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted'"); United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006) ("One thing that is clear from Crawford is that the [Confrontation] Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement"); State v. Rogers, 2005 WL 1576949, at *3 (N.C. App. July 5, 2005)("[T]estimony concerning Special Agent Earle's involvement simply explained to the jury how the CODIS data

came to the attention of Special Agent Budzynski.   It was not offered to establish the CODIS match.   Special agent Budzynski testified that he conducted his own independent analysis of the data, concluded that the two DNA profiles matched, and presented the results of his analysis to the jury.   The trial court did not err in overruling the defendant's objection.").

Based upon a review of Williams' Sixth Amendment claim, which was considered by the Alabama Court of Criminal Appeals and denied on the merits, the Court finds that he has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law as set forth in Supreme Court case law, or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.   Likewise, Williams has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Thus, Petitioner has not established that he is entitled to relief under § 2254(d)(1). In addition, Williams has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court

must presume as correct the determinations of all factual issues made by the state court. 28 U.S.C. § 2254(e). Williams has not rebutted that presumption of correctness by clear and convincing evidence. Accordingly, Williams' request for habeas relief on the basis of his Sixth Amendment claim is denied.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing 2254 Cases. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 282, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). Based upon a careful review of

the record in this case, the undersigned opines that Williams has not made the requisite showing. Thus, he is not entitled to a certificate of appealability.

**CONCLUSION**

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that Petitioner's rights were not violated and that his request for habeas corpus relief should be denied. The undersigned further opines that Petitioner is not entitled to a certificate of appealability. It is so recommended.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **2nd** day of **March, 2010.**


          **/s/ SONJA F. BIVINS**
          **UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION <ins>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</ins>

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within **fourteen (14)** days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <ins>See</ins> 28 U.S.C. § 636(b)(1)(c); <ins>Lewis v. Smith</ins>, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.   Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

---

    [9]The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

3. **<u>Transcript (applicable where proceedings tape recorded)</u>**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.